# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 3, 2013

No. 12-20323
Summary Calendar

Lyle W. Cayce
Clerk

ROCHELLE GASPARD GORDON,

Plaintiff-Appellant

v.

JPMORGAN CHASE BANK, N.A. and CHASE HOME FINANCE, LLC,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
No. 4:12-cv-00528

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This case arises from the plaintiff's unsuccessful efforts to obtain a permanent modification of her mortgage. The district court granted the defendants' motion to dismiss for failure to state a claim. Because we find that the agreements between the parties are subject to the statute of frauds, and because the plaintiff has not alleged that the defendants signed – or promised

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20323

to sign – any written modification to those agreements, we AFFIRM the district court's order.

## FACTS AND PROCEEDINGS

Plaintiff Rochelle Gaspard Gordon entered into a home mortgage loan for $190,000 with Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC ("Chase") in 2006. Gordon agreed to pay Chase in monthly installments of $1,370.29.

Three years later, Gordon suffered an injury that left her unable to work, and she fell behind on her payments. As a result, the parties entered into a Forbearance Agreement (the "Agreement") in February 2010. Gordon acknowledged in the Agreement that she had defaulted on the loan and that she owed Chase a total past-due debt of $20,017.69. The Agreement specified that Gordon would pay a reduced monthly amount of $936.66 in February, March, and April of 2010, and "the regular monthly payment thereafter until final maturity as stated in the Loan Documents." Chase, in turn, agreed to "forbear from exercising its rights under the Loan Documents" pursuant to the Agreement's terms, but if Gordon defaulted under the Agreement, Chase would proceed with foreclosure.

The terms of the Agreement do not reference a permanent modification of the loan. The Agreement released Chase from "any claims, actions or causes of action, defenses, counterclaims or setoffs of any kind" that Gordon "now or hereafter may assert against [Chase] in connection with the making, closing, administration, collections or the enforcement by [Chase] of the loan documents." Finally, the Agreement provides that it may not be "supplemented, changed, waived, discharged, eliminated, modified, or omitted except by written document between" the parties, and "neither parole evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no

promises, conditions, or obligations other than those contained in the Agreement."

Chase participates in the federal Home Affordable Modification Program (HAMP), which allows homeowners to receive income-based mortgage modifications. A Supplemental Directive to HAMP, submitted by Chase as an appendix to its brief on appeal, allows for loan servicers to offer borrowers a temporary "trial period plan," with the provision that if the borrower complies with the terms of such a plan, a permanent loan modification will become effective. Gordon alleges that Chase representatives told her the Agreement constituted the "beginning" of such a trial plan. She was "made to believe" that after fulfilling the terms of the Agreement, her loan would "go into automatic modification and nothing else needed to be done."

After making three reduced payments under the terms of the Agreement from February through April 2010, Gordon continued to make payments on the reduced payment schedule until September 2010. Gordon describes her payments as complying with the terms of the Agreement, while Chase contends that the Agreement required Gordon to make regular rather than reduced payments from May onwards. In September 2010, Chase returned Gordon's monthly payment, claiming that it was late, and threatened to foreclose on Gordon's home.

Over the next several months, Chase representatives told Gordon to "be hopeful and she [would] get her loan modified." Gordon applied for a loan modification from Chase. Chase representatives assured her that her application paperwork was "fine" and that she would "receive all the needed documents confirming the beginning of the modification soon." Subsequently, however, Gordon received inconsistent information from Chase regarding the status of her application. One Chase representative told Gordon that Chase would send final papers for her to sign "any day from now," but Gordon was

unable to get in touch with the representative following that conversation. Gordon alleges that she was alternately told that her home would be foreclosed on, but also that she would be considered for a loan modification.

Gordon filed suit against Chase in the United States District Court for the Southern District of Texas in February 2011, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of implied contract, and promissory estoppel. Chase moved to dismiss all of Gordon's claims under Federal Rule of Civil Procedure 12(b)(6), arguing that the waiver provision in the Agreement barred Gordon's claims and that Gordon failed to allege facts upon which relief could be granted. In the alternative, Chase moved for a more definite statement of Gordon's pleadings under Rule 12(e).

The district court granted Gordon's motion to dismiss. The court found that Chase was entitled to dismissal because of the Agreement's release provision, and that because the Agreement "contains a clear release of all claims, amendment of the complaint in this case would be futile." The district court also found that Gordon had failed to allege facts sufficient to state a claim for relief under the theories put forth in the complaint.

## STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo, construing the complaint liberally in favor of the plaintiff, and accepting all well-pleaded facts in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555.

No. 12-20323

## DISCUSSION

The district court found that the Agreement's waiver provision released Chase from all claims asserted by Gordon in this suit. However, neither party addresses this finding on appeal. As Chase has not argued that the waiver provision controls on appeal, we will not rely on it. Instead, Chase argues the district court correctly ruled that Gordon's complaint failed to state a claim for breach of contract and for promissory estoppel.[1] The parties agree that Texas law controls.

Gordon first argues that Chase breached a contract to permanently modify her loan. "[T]he existence of a valid contract" is an "essential element[] in a breach of contract claim" under Texas law. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (quoting *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex.App. – Houston 2000, no pet.)). To show the existence of a contract, a plaintiff must establish, *inter alia*, an offer, "an acceptance in strict compliance with the terms of the offer," and a meeting of the minds. *Southern v. Goetting*, 353 S.W.3d 295, 299 (Tex. App. – El Paso 2011, reh'g denied). The district court found that Gordon only alleged that she engaged in negotiations with Chase, not that Chase made an offer to permanently modify her loan.

Gordon argues that communications between herself and Chase "ripened into a valid contract" when Chase offered to modify her loan provided that she supply certain documents, and she accepted Chase's offer by providing those documents. Chase responds that the loan agreements between the parties are subject to the statute of frauds, and that Gordon has pointed to no written agreement that would modify the terms of the contract.

---

[1] Gordon lists breach of implied contract and breach of the implied covenant of good faith and fair dealing in the Statement of Issues of her brief on appeal, but she does not argue those claims. She has therefore waived those arguments. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

No. 12-20323

We agree that both the original mortgage documents and the Forbearance Agreement are governed by the statute of frauds. Under Texas law, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. Com. Code § 26.02(b). The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." *Id.* § 26.02(a)(2).

Gordon argues that the HAMP Supplemental Directive trumps the statute of frauds by allowing for "oral loan modification," but points only to a provision of HAMP allowing servicers to use "verbal financial information" to prepare and offer a trial period plan. Nothing in the Supplemental Directive indicates that a binding agreement would exist between servicer and borrower to permanently modify a loan without a trial period plan containing a written provision to that effect. Gordon relies on a Chase representative's statement that her payment under the Agreement was the "beginning" of a trial period plan, but the Agreement itself does not state that compliance with its terms would lead to a permanent loan modification.[2]

When a written agreement is governed by the statute of frauds, it cannot be materially modified by a subsequent oral agreement. *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967). Chase points to only one written provision: the application form she submitted to Chase, which provides that Chase would "determine whether [she is] eligible for a mortgage modification" and, if so,

---

[2] *Wigod v. Wells Fargo Bank, N.A.*, cited by Gordon, is not to the contrary. In that case, the parties signed a written trial period plan which explicitly provided that if the borrower complied with its terms, then "the Lender will provide [the borrower] with a [permanent] Loan Modification Agreement." 673 F.3d 547, 558 (7th Cir. 2012). The statute of frauds was therefore not at issue in *Wigod*.

No. 12-20323

would send her "a Trial Period Plan Notice that explains the plan and next steps." Although Gordon alleges that she was verbally assured that she would receive a loan modification, she does not point to a written offer to do anything more than determine her eligibility for such a modification.[3] She has therefore not alleged facts that would allege a modification of her loan terms under the statute of frauds.

Gordon also argues that Chase is liable under the equitable theory of promissory estoppel. Under Texas law, although promissory estoppel is primarily a defensive theory, it is also available as a cause of action for a "promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex. App - Corpus Christi 2001, no pet.).

Where, as here, an oral promise is barred by the statute of frauds, to show promissory estoppel the promisor must have "promised to sign a written document that would satisfy the statute of frauds." *Id.* (citing *Nagle v. Nagle*, 633 S.W.2d 796, 799-800 (Tex. 1982)). "[C]ourts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred[l and (3) the court must enforce the promise to avoid injustice." *Nagle*, 633 S.W.2d at 800.

Texas courts require that for promissory estoppel to apply, the agreement that is the subject of the promise "must be in writing at the time of the oral promise to sign it." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir.

---

[3] Gordon also alleges that Chase reneged on its promise to send her loan modification documents. She did not make that claim in her complaint. Gordon points to a Chase representative's oral statement that Chase would send her loan modification papers "any day from now." But that statement does not constitute an oral contract under Texas law. *See Goetting*, 353 S.W.3d at 299-300 ("The terms of an oral contract must be definite, certain, and clear as to all essential terms and, if they are not, the oral contract fails for indefiniteness.").

2010) (quoting *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex.App. – Dallas 2002)). Gordon has not alleged that any written permanent loan modification agreement existed, nor that Chase promised to sign such an agreement. Instead, Gordon alleged that a Chase representative told her that Chase would send final modification papers for her to sign "any day from now." Gordon has not alleged facts that would show that any modification agreement "was ever prepared," nor that Chase represented that it had "*already* been prepared." *Breezevale*, 82 S.W.3d at 438-39 (declining to find promissory estoppel in a case subject to the statute of frauds where the defendant's representative informed the plaintiff that he planned to "memorialize" a working agreement into a written agreement.); *see also Morris v. LTV Corp.*, 725 F.2d 1024, 1029 (5th Cir. 1984). *Cf. Wigod*, 673 F.3d at 558 (finding breach of contract where a bank executed an agreement expressly providing that if the borrower complied with certain terms, the bank would "provide [the borrower] with a [permanent] Loan Modification Agreement.").[4]

Gordon requests, in the alternative, that she be allowed to replead any insufficiently alleged claims before the district court. Chase argued in its motion to dismiss that the Agreement's waiver provision released it from all of Gordon's claims in this case. Gordon did not address the waiver provision in her response to Chase's motion. The district court found that the waiver provision barred all of Gordon's claims and, therefore, that amendment of the complaint would have been "futile."

We review a district court's denial of leave to amend a complaint for abuse of discretion. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir.

---

[4] Gordon argues that regardless of whether promissory estoppel applies in this case, "equity and fairness" dictate that Chase should be held to its promise to modify the loan. But Gordon does not assert any equitable theory of relief other than promissory estoppel under which Chase's oral representations would be enforceable.

1981).  The parties do not discuss the Agreement's waiver provision on appeal, and we therefore do not rely on it.  However, we do not find that the district court abused its discretion in denying leave to amend based on the application of a waiver provision, when Gordon did not challenge the validity or effect of the provision.

Because the loan agreement and forbearance agreement between the parties are governed by the statute of frauds, and because Gordon has not alleged that Chase signed or promised to sign a subsequent agreement, we agree with the district court that Gordon has not made out a claim of breach of contract or promissory estoppel under Texas law.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of the Defendant's motion to dismiss Gordon's claims.