# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2023

Lyle W. Cayce
Clerk

No. 22-50141

Emilio Lira,

*Plaintiff—Appellant*,

*versus*

Edward Jones Investments, *also known as* Edward D. Jones & Company, L.P.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-7

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant Emilio Lira brings a Title VII retaliation claim against his former employer, Defendant-Appellee Edward Jones. The district court granted summary judgment for Edward Jones, holding that Lira failed to establish the causal link between his termination and his protected

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50141

activities and thus had not established a prima facie case of retaliation. Lira appeals. We AFFIRM.

## I.

In 2016, Emilio Lira, who identifies as Hispanic/Latino, was employed as a financial advisor by Edward D. Jones & Co., L.P. ("Edward Jones"). That year, he brought a lawsuit against Edward Jones alleging discrimination and retaliation based on race and national origin. On March 12, 2019, the district court in that case granted summary judgment to Edward Jones and taxed Edward Jones's costs against Lira.

Lira was required to timely report this 2019 judgment to Edward Jones pursuant to Edward Jones's internal policies, which implemented Financial Industry Regulatory Authority ("FINRA") reporting obligations. He did not. An Edward Jones employee from the reportable events team then gave Lira two deadlines to disclose the 2019 judgment. Lira did not comply with either deadline.

Lira reported the judgment on May 8, 2019 and also sent an email to the reportable events team employee accusing Edward Jones and its employees of "behav[ing] like a white supremacist or a colluder of white supremacist [*sic*]." Edward Jones terminated Lira's employment on May 13, 2019 for unprofessional conduct and failure to provide timely responses to compliance inquiries. Lira subsequently filed a retaliation charge with the Equal Employment Opportunity Commission ("EEOC"). On October 18, 2019, the EEOC issued a notice of dismissal and a right-to-sue letter.

On January 6, 2020, Lira again sued Edward Jones for retaliation. Edward Jones moved to dismiss. On May 26, 2020, Lira filed the operative amended complaint alleging that his termination was retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). In this complaint, he proffered five protected activities: (1) complaining internally

of discrimination at Edward Jones in 2014; (2) filing a charge of discrimination with the EEOC in 2016; (3) filing his 2016 employment discrimination lawsuit against Edward Jones; (4) giving a deposition in that lawsuit; and (5) opposing Edward Jones's summary judgment motion in that lawsuit. Edward Jones moved for summary judgment.

In February 2022, the district court granted Edward Jones's motion for summary judgment. It held that Lira failed to make a prima facie case of retaliation because he could not establish the causation requirement of a retaliation claim. Alternatively, the district court noted that even if Lira had established a prima facie case, "Edward Jones satisfied its burden by presenting evidence of legitimate, nonretaliatory reasons supporting Lira's termination." Lira timely appeals.

## II.

We review *de novo* a grant of summary judgment and apply the same standards as the district court. *Yogi Metals Grp., Inc. v. Garland*, 38 F.4th 455, 458 (5th Cir. 2022). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence and draw all inferences in a light most favorable to the nonmovant; however, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003).

Because Lira seeks to prove retaliation through circumstantial evidence, he must satisfy the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825, 834–35 (5th Cir. 2022). Under this framework, Lira has the burden of making a prima facie case by showing that (1) he participated in an activity protected by Title VII; (2) the employer took

No. 22-50141

an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action. *Id.* at 835. The primary issue in this appeal is the third element, often called the "causal link." *See, e.g.*, *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021).

### III.

Lira cannot show the requisite casual connection between any of his proffered protected activities and his termination, *i.e.*, the materially adverse action. As an initial matter, Lira's protected activities are too temporally removed from his May 2019 termination to show causation based on timing alone. We have previously noted that, at the prima facie stage, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)). Previously, we have held that periods of two-and-a-half months, *Garcia*, 938 F.3d at 243, and six-and-a-half weeks, *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015), were sufficiently close enough to show a causal connection at this stage. A period of three or four months, on the other hand, may not be sufficiently close. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing cases).

Here, the first four protected activities occurred from November 2014 to November 2017 and are thus at least one year removed from Lira's May 2019 termination.[1] These activities are clearly outside the range in which temporal proximity alone can establish the causal link. And the fifth activity,

---

[1] Lira's (1) internal complaint of discrimination at Edward Jones was filed in November 2014; (2) his first EEOC charge was filed in February 2016; (3) his employment discrimination lawsuit was filed in October 2016; and (4) he was deposed in that lawsuit in November 2017.

which Lira characterized as "filing a response in opposition to Defendant's Motion for Summary Judgment," occurred in early January 2019, more than four months before his May 2019 termination. This, too, falls outside the established range. As such, the timing of these protected activities alone does not sufficiently show the requisite causal link.

Lira's arguments do not compel a contrary conclusion. Lira's primary argument concerning causation is a novel "big picture" theory purportedly drawn from *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992). Lira seems to suggest that we should group the first four activities as part of the first lawsuit that ended in March 2019 (*i.e.*, plausibly close enough to his termination) for purposes of identifying causation. This argument is unsupported by the cited authority. In *Shirley*, we held that a plaintiff's firing 14 months after filing an EEOC complaint (and two months after the EEOC complaint's dismissal) was retaliation for her bringing said complaint. *Id.* at 42–43. But our conclusion in that case was supported by additional evidence beyond just temporal proximity, including her boss's frequent mentions of the EEOC complaint and her receiving complaints of "flagrant indiscretions or violations." *Id.* at 43. Lira cites *Shirley* in arguing that here, what the district court failed to consider is that the lapse of time did not automatically absolve Appellee of its responsibility for retaliating against Appellant when we look at the big picture. *Id.* at 39. But more accurately read, *Shirley* stands for the principle that a 14-month delay between a protected activity and a termination will not necessarily preclude a finding of causation when the plaintiff can adduce other evidence suggesting a causal relationship. *See id.* at 44 ("The district court properly weighed the lapse of time as one of the elements in the entire calculation of whether Shirley had shown a causal connection between the protected activity and the subsequent firing.").

In attempting to show this causal relationship, Lira makes various arguments and adduces various documents to provide the additional

No. 22-50141

evidence required by *Shirley*. We consider these below but ultimately conclude that Lira has not met his burden of proof with respect to causation concerning any of his protected activities. *See Owens*, 33 F.4th at 835.

First, Lira has presented no evidence that the Edward Jones employee responsible for his termination decision was aware of Lira's filing this opposing motion at the time of Lira's termination.[2] Lira's only citations to the record indicate that the employee in question was aware only of Lira's first EEOC complaint, the first lawsuit, and the first lawsuit's dismissal. The cited testimony does not show that the employee knew of the specific protected activity Lira proffers: the filing of the opposition to summary judgment. Without awareness of the specific protected activity at the time of termination, Lira cannot draw the causal link between this protected activity and his termination. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."); *id.* at 883 n.6 ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said . . . that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

---

[2] Lira has also not cited any legal authority or argued that knowledge by the terminating employee was not required through, *e.g.*, a cat's paw theory of liability. *See Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015) (explaining the cat's paw theory).

No. 22-50141

Next, we discuss the various critical emails Lira sent to Edward Jones after the conclusion of the first lawsuit in March 2019.[3] We note that these emails were not included in the amended complaint.[4] The district court interpreted Lira's filing these emails as Lira trying to belatedly proffer examples of additional protected activities for his retaliation claim and ruled that these emails were "not properly before the court as bases for Lira's retaliation claim." On appeal, Lira argues that these emails were not introduced "for the purposes of adding more protected activities but to shine a light on the big picture" that Lira was "a thorn on the side of [Edward Jones] because of his continued complaints."

We are unconvinced by Lira's argument that these emails were not introduced as additional protected activities. These emails contain criticisms by Lira of various practices of his employer. These emails are thus squarely within what we have ruled to be "protected activities." *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (recognizing that "protected activity can consist of . . . 'oppos[ing] any practice made an unlawful employment practice by this subchapter'" (alteration in original) (quoting 42 U.S.C. § 2000e-3(a))). And Lira, under his legally unsupported "big picture" theory, seems to be introducing these emails as bases for his retaliation. Thus, despite his language arguing otherwise, Lira elsewhere attempts to characterize these emails as additional protected activities. To the extent he is doing so, these emails should have been in the amended complaint and cannot now serve as bases for a retaliation claim. *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 370 (5th Cir. 2017) (affirming a grant

---

[3] These emails generally criticize Edward Jones's culture and practices.

[4] These emails were included in Lira's response (filed after the amended complaint) opposing Edward Jones's motion for summary judgment.

of summary judgment for the employer because the plaintiff "completely failed to plead retaliation claims based on these events in her complaint").

Even taking Lira at face value and treating these emails as evidence of causation, he does not make any cognizable argument as to how they show a causal link between his termination and his filing an opposition to Edward Jones's summary judgment motion in the first lawsuit. Instead, he makes conclusory arguments that the district court "failed to consider other evidence of retaliation in deciding whether there was a causal connection between Appellant's lawsuit and his termination." He does not explain how these emails constitute such evidence, and we do not credit this argument. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument."). As such, these emails cannot suffice for Lira to meet his burden of proof on the causation element.

Lira's attempts to point to other record evidence of retaliation are similarly unavailing. He presents three sources of "testimony via affidavit and emails authored by Appellee personnel" purportedly showing "animosity held by" Edward Jones. The first is Lira's declaration, the second is an email discussing Lira's interest in the Uvalde office, and the third is an article from a human resources publication announcing Edward Jones's plans to combat racism. Because Lira does not further elaborate which portions of these documents constitute evidence of animosity (or why they do), he has waived his argument that these documents evince animosity. *See Procter & Gamble Co.*, 376 F.3d at 499 n.1; FED. R. APP. P. 28(a)(8)(A) (stating that

appellants must provide reasons for their assertions, including "citations to the authorities and parts of the record" on which they rely).[5]

Finally, Lira's other miscellaneous arguments are without merit. First, he argues that "[Edward Jones's] reaction to the email wherein the phrase 'white supremacists' was used" constitutes evidence of retaliation. In doing so, Lira suggests, without a single citation to legal authority, that Edward Jones had already admitted that racism existed within its organization, that his description of Edward Jones as being composed of white supremacists was accurate, and that he was fired "to deflect this fact." We do not credit this argument because nothing in this line of argumentation provides any additional evidence to suggest a causal link between any of Lira's protected activities and his termination. Second, Lira argues that "there was no evidence presented by [Edward Jones] that [Lira] was performing poorly in his job." But Lira bears the burden of proving a causal link between his protected activities and his termination; accordingly, identifying a way in which the other party has not proven an alternative reason for his termination is insufficient for him to meet his burden of proving the causal connection in the first instance.[6]

## IV.

---

[5] Regarding the article, Lira only rhetorically asks why Edward Jones would "announce such a plan if racism did not exist within the company." But nothing in this article suggests anything about Edward Jones's retaliation as to Lira's specific protected activity. Accordingly, nothing in this article is sufficient for Lira to meet his burden of proving causation.

[6] Because we hold that Lira has not met his burden of showing a prima facie case, we need not and do not reach the issue of whether Edward Jones has met its burden of proving legitimate, nonretaliatory reasons for Lira's termination. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) ("If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action.").

No. 22-50141

For the foregoing reasons, we AFFIRM.